IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY A. JONES, | No. 2:22-CV-1364-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| BENEVIOUS, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Plaintiff's original complaint, ECF No. 1.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody.  See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply,

concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner at California Medical Facility in Vacaville, California.  ECF No. 1 at 2.  Plaintiff names the following as defendants: (1) Brenda Ebert; (2) Lucis, Psych Tech; (3) Benevious, Warden; (4) C. Sparks, R.N.; (5) Daylor; (6) Lee; (7) Barchan, Primary Care Doctor; (8) Turner, Correctional Officer; (9) Sanchez, Law Librarian.  See id. at 2-9.  Plaintiff alleges violations of the First, Eighth, and Fourteenth Amendments.  Id. at 1.  Plaintiff also brings claims under the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973 and the Health Insurance Portability and Accountability Act of 1996 (HIPAA).  Id. at 1-2.

Plaintiff first states that Defendant Ebert wrote a declaration in a previous lawsuit in which Plaintiff was involved.  Id. at 2.  Plaintiff contends that Defendant Ebert provided confidential medical information to the Attorney General in the declaration without Plaintiff's consent or authorization.  Id. at 2-3.  Furthermore, Plaintiff generally alleges that Defendant Ebert conspired with the Attorney General to delay his return to a "sending facility" and ignored his requests for information under the "F.O.I.A."  See id. at 3.

Next, Plaintiff generally asserts that he tried to transfer from California Medical Facility (CMF) for eight months, "only to be mislead [sic] by Defendant Lucis." Id.  Plaintiff also contends that Defendant Lucis' clinician license is in question because she appears to be a "psych tech, which is out side [sic] the scope of her practice." Id.

Plaintiff further alleges that Defendant Benevious, warden of the CMF facility, is liable if Defendant Lucis is not licensed for their position.  Id. at 4.

Next, Plaintiff contends that Defendant C. Sparks retaliated against Plaintiff and interfered with his treatment. See id. Specifically, Plaintiff argues that Defendant Sparks falsely reported to Defendant Daylor that he "ran out of the office mad cause [he] didn't want to be placed on a diet." Id. Plaintiff also states that Defendant Daylor told Plaintiff directly that he saw him running out of the office and asked him why he refused to see the dietician. See id. Plaintiff generally alleges that Defendant Sparks conspired with Defendant Daylor to provide inadequate medical treatment. See ECF No. 1 at 4.

Next, Plaintiff alleges that Defendants Lucis, Sparks, and Daylor conspired to deny Plaintiff access to his self-help treatment by refusing to allow Plaintiff access to a "digital reader," despite having a prescription for such technology. See id. at 5. The reader allows Plaintiff to read books that help with sleep, depression, and anxiety. Id. Plaintiff states that the reader was given back two weeks later. See id.

Plaintiff further argues that Defendant Lee, the individual responsible for passing out medications, violated Plaintiff's rights under the Eighth Amendment when he put Plaintiff at risk of heart complications. See id. at 5-6. Specifically, Plaintiff contends that Defendant Lee did not distribute his medication in accordance with prison policy. See id. at 6. Accordingly, Plaintiff stated that he refused to take the medication. See id. Plaintiff argues that Defendant Lee knew or should have known that Plaintiff refusing to take his medication could lead to grave injury or death. See id. Furthermore, Plaintiff also states that Defendant Lee told Defendant Daylor that medications are distributed in certain ways when inmates are disruptive or combative. See id. Accordingly, Plaintiff contends that Defendant Lee violated his rights under the Equal Protection Clause of the Fourteenth Amendment by distributing his medications differently than with other inmates. See id.

Next, Plaintiff alleges that his primary care doctor, Defendant Barchan, conspired with others to deny medical treatment. See id. at 7. He further alleges that Defendant Barchan was deliberately indifferent to his serious medical needs. See id. Specifically, Plaintiff states that Defendant Turner woke him up because he was bleeding from his mouth. See id. Plaintiff contends that Defendant Barchan "did nothing" and told him to let him know if it happens again.

3

1   See id.  Plaintiff then contends that he summoned Defendant Turner and Defendant Barchan
2   because he noticed a large pool of blood in the toilet.  See id.  Plaintiff alleges that Defendant
3   Barchan did nothing and advised Plaintiff to notify him if it happens again.  See id.
4               With respect to Defendant Turner, Plaintiff generally alleges that he "was working
5   on both side[s] of the fence," assisting Plaintiff and then subsequently relaying information to
6   prison staff.  Id. at 8.  Plaintiff told Turner he was going to file a lien on "these people" who were
7   not taking his seriously.  Id.  Plaintiff saw this as a threat.  Id.
8               Lastly, Plaintiff alleges that Defendant Sanchez, CMF law librarian, violated his
9   rights under the First Amendment when he lost exhibits for his pending case in superior court,
10  which resulted in the denial of his petition.  See id. at 9.  Plaintiff goes on to generally assert that
11  CMF staff interfered with his mail and purposely ended his phone calls.  See id. at 10.
12
13                              **II.  DISCUSSION**
14              Except for Plaintiff's First Amendment claim regarding his mail and phone calls,
15  which can proceed, Plaintiff's claims fail because they allege insufficient facts to state a
16  cognizable claim.
17          **A.  Vague and Conclusory Claims**
18              Claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84
19  F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if
20  the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which
21  it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege
22  with at least some degree of particularity overt acts by specific defendants which support the
23  claims, vague and conclusory allegations fail to satisfy this standard.  See Ivey v. Bd. of Regents
24  of Univ. of Alaska, 673 F.2d 266 (9th Cir. 1982).
25              Plaintiff argues Defendant Ebert violated HIPAA by providing a declaration to the
26  Attorney General containing confidential medical information. ECF No. 1 at 2-3. Plaintiff must
27  specify what specific medical information was shared. See Kimes at 1129.  Information about
28  Defendant Ebert, including her profession, how she possessed Plaintiff's medical information,

and the relationship with the Attorney General, would be helpful (if not necessary) to establish a cognizable claim.

Plaintiff also alleges that Defendant Ebert conspired with the Attorney General to delay his return to a "sending facility" and ignored requests for information under the Freedom of Information Act. ECF No. 1 at 3. Plaintiff must provide specific factual allegations to support these claims. See Ivey, 673 F.2d at 266.

Plaintiff also brings claims under the Rehabilitation Act and ADA, though Plaintiff does not demonstrate how the statutes were violated.

**B. Medical Needs**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). An injury or illness is sufficiently serious if the failure to

treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff claims he was denied his digital reader by Defendants Lucis, Sparks, and Daylor. ECF No. 1 at 5. However, mere disagreement over the appropriateness of medical treatment is insufficient for a cognizable claim. See Jackson, 90 F.3d at 332. Objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and subjectively, the prison official must have acted

unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  The facts in the complaint are insufficient to show denial of the reader satisfied either prong.

Plaintiff argues the Eighth Amendment was violated when he refused medication because it was not distributed in accordance with prison policy.  ECF No. 1 at 5-6.  Similarly, these facts cannot support a contention that, objectively, the officials' acts or omissions were so serious that they resulted in the denial of the minimal civilized measure of life's necessities or that subjectively the prison officials acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.

Plaintiff again fails to present a cognizable claim by pleading that Defendant Barchan did nothing when Plaintiff was bleeding.  See ECF No. 1 at 7.  Barchan was monitoring the situation, and Plaintiff does not plead that he was harmed by the lack of treatment.  See id.  The complaint does not suggest Barchan acted with the purpose of inflicting harm.  See id.

### C. Equal Protection Claim

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose.  See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972).  Prisoners are protected from invidious discrimination based on race.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline.  See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam).  Prisoners are also protected from intentional discrimination on the basis of their religion.  See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997).  Equal protection claims are not necessarily limited to racial and religious discrimination.  See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class); see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Harrison v. Kernan, 971 F.3d 1069 (9th Cir. 2020) (applying intermediate scrutiny to claim of discrimination on the basis of gender).

///

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

Plaintiff does not plead that he was discriminated against because of a protected class, only that his medications were distributed differently than normal on one occasion. See ECF No. 1, pg. 6.

### D. Causal Links Between Defendant and Deprivations

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Plaintiff argues Defendant Lucis misled him about a transfer and may have acted outside the scope of her practice. ECF No. 1 at 3. Plaintiff does not plead a constitutional harm or deprivation occurred because of Defendant Lucis. See id.

Similarly, absent additional facts relating to a specific harm to Plaintiff, the instant pleading does not state a cognizable claim as to the license status of Defendant Lucis. See id.

### E. Retaliation

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

Plaintiff alleges retaliation by Defendant Sparks and Daylor. See ECF No. 1 at 1. However, Plaintiff does not discuss what protected conduct caused the retaliation. See id. For a cognizable claim, Plaintiff must explain how his protected conduct caused the adverse action. See Rhodes, 408 F.3d at 568.

### F. Threats

Allegations of name-calling, verbal abuse, or threats generally are also not unusually gross for a prison setting. See Carpenter v. Molina, 2021 WL 2226635, at *3 (E.D. Cal. June 2, 2021). Even a defendant's threats to kill or harm a plaintiff are insufficient, without more, to give rise to a cognizable verbal harassment claim. See Bailey v. Soto, 2019 WL 4452970, at *7-9 (C.D. Cal. July 10, 2019).

///
///
///

However, "[a] threat of deadly force made merely to inflict gratuitous fear and punishment when the party has both the opportunity to carry out the threat and evidences the intent to do so does state a cognizable claim under the Eighth Amendment." Oliver v. Noll, 2012 WL 2055033, at *2 (N.D. Cal. June 5, 2012) (citing Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992) (pointing gun at inmate's head and threatening to shoot amounts to cognizable Eighth Amendment claim; and Burton v. Livingston, 791 F.2d 97, 100 (8th Cir. 1986) (drawing gun and terrorizing prisoner with threats of death while using racially offensive language states first amendment, due process and equal protection claims)). Further, where there is a threat of non-deadly force where, for example, a defendant aims a weapon at a plaintiff "for the malicious purpose of inflicting gratuitous fear", there is a cognizable Eighth Amendment claim. See Parker v. Asher, 701 F. Supp. 192, 195 (D. Nev. 1988) (holding that "guards cannot aim their taser guns at inmate for the malicious purpose of inflicting gratuitous fear. Allegations of such sadistic conduct state a cognizable claim of cruel and unusual punishment.").

Plaintiff alleges Defendant Turner threatened him by telling him not to file a lien. See ECF No. 1, pg. 8. Even if Turner's words constituted a threat, there is no corresponding action pleaded, which would be necessary to make the threat a cognizable claim. See Bailey v. Soto, 2019 WL 4452970, at *7-9 (C.D. Cal. July 10, 2019).

### G. Legal Mail

Prisoners have a First Amendment right to send and receive mail. See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Prison officials may intercept and censor outgoing mail concerning escape plans, proposed criminal activity, or encoded messages. See Procunier v. Martinez, 416 U.S. 396, 413 (1974); see also Witherow, 52 F.3d at 266. Based on security concerns, officials may also prohibit correspondence between inmates. See Turner v. Safley, 482 U.S. 78, 93 (1987). Prison officials may not, however, review outgoing legal mail for legal sufficiency before sending them to the court. See Ex Parte Hull, 312 U.S. 546, 549 (1941). Incoming mail from the courts, as opposed to mail from the prisoner's attorney, for example, is not considered "legal mail." See Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998).

Specific restrictions on prisoner legal mail have been approved by the Supreme Court and Ninth Circuit. For example, prison officials may require that mail from attorneys be identified as such and open such mail in the presence of the prisoner for visual inspection. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Sherman v. MacDougall, 656 F.2d 527, 528 (9th Cir. 1981). Whether legal mail may be opened outside the inmate's presence, however, is an open question in the Ninth Circuit. See Sherman, 656 F.2d at 528; cf. Mann v. Adams, 846 F.2d 589, 590-91 (9th Cir. 1988) (per curiam) (concluding mail from public agencies, public officials, civil rights groups, and news media may be opened outside the prisoner's presence in light of security concerns). At least three other circuits have concluded that legal mail may not be opened outside the inmate's presence. See id. (citing Taylor v. Sterrett, 532 F.2d 462 (5th Cir. 1976), Back v. Illinois, 504 F.2d 1100 (7th Cir. 1974) (per curiam), and Smith v. Robbins, 452 F.2d 696 (1st Cir. 1972)); see also Samonte v. Maglinti, 2007 WL 1963697 (D. Hawai'i July 3, 2007) (recognizing open question).

Alleging limited access to a phone may be sufficient to sustain First Amendment freedom of association claim. See Tiedemann v. von Blanckensee, 72 F.4th 1001, 1006 (9th Cir. 2023).

Plaintiff alleges some of his mail is not being sent or returned and his phone conversations are being interrupted, which gives rise to a cognizable claim. See ECF No. 1 at 9-10.

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated: August 7, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE